# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 22, 2015 Session

## DOYLE HANEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Cocke County**
**Nos. 3457, 4924      Ben W. Hooper II, Judge**

**No. E2014-00462-CCA-R3-PC - Filed March 20, 2015**

The Petitioner, Doyle Haney, appeals the Cocke County Circuit Court's denial of his two petitions for post-conviction relief. In case number 3457, the Defendant was convicted of the sale of 0.5 grams or more of cocaine and received a thirty-year sentence. In case number 4924, he was convicted of delivering 0.5 grams or more of cocaine and received a thirty-year sentence. The sentences were ordered to be served concurrently. On appeal, the Petitioner contends that the trial court erred by denying post-conviction relief because he received the ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Scott Justice, Jefferson City, Tennessee, for the appellant, Doyle Haney.

Herbert H. Slatery III, Attorney General and Reporter; John H. Bledsoe, Senior Counsel; James B. (Jimmy) Dunn, District Attorney General; and Brownlow Marsh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from the Petitioner's two drug-related convictions. The Defendant pleaded not guilty in both cases, and the trial in case number 4924 occurred before the trial in case number 3457. Relative to case number 4924, the Petitioner appealed his conviction, and this court summarized the facts of the case as follows:

> At trial, Assistant Special Agent James Williams with the Tennessee
> Bureau of Investigation (TBI) Drug Investigative Division testified that he

participated in a controlled purchase of crack cocaine on August 9, 2006, involving Teresa Woodward, an undercover TBI agent, Jacquelyn Dalton, a confidential informant, and the Defendant. Agent Williams assisted in briefing Agent Woodward and Ms. Dalton before the controlled buy; both Ms. Dalton's person and her vehicle were searched. Agent Williams monitored the purchase via transmitting device and recorded the exchange. The audio recording of the transaction was entered as an exhibit and played for the jury.

To facilitate the exchange, Ms. Dalton was given $100, in twenty-dollar bills, to buy an "eight ball" from the Defendant for $150. Agent Woodward had an additional $60 to complete the transaction. Agent Williams explained that this was a control measure, done in order for the parties to have to talk about change.

Ms. Dalton called the Defendant twice to arrange the purchase, but her calls went unanswered. She and Agent Woodward then proceeded to the Defendant's residence on Rock City Road. According to Ms. Dalton, they encountered the Defendant, along with two other men, in "the loop" at "the end of the road." Ms. Dalton knew one of the other individuals as "Steve," but she was unable to identify the other man. She stopped the vehicle next to a truck, and the Defendant approached.

According to Agent Woodward, as the Defendant approached, she asked him "what he was doing," to which he advised that "he was building a fence." According to Agent Woodward, who was familiar with the Defendant before this transaction, the Defendant "appeared somewhat edgy" that day, meaning that he seemed "nervous or paranoid." The Defendant directed the conversation towards what the two women "wanted." Ms. Dalton responded that she desired an "eight" at a price of $150, and the Defendant agreed to the exchange. The women then combined their respective amounts of cash, $160 total, and Ms. Dalton asked the Defendant if he had $10 in [change].

The Defendant motioned to Ms. Dalton to get out of her vehicle and come "to the other side of the truck" parked beside her. Ms. Dalton estimated that to get to the other side of the truck, required her to travel roughly the "length of a vehicle" or about ten feet. After she complied with the request and went to the other side of the truck, the Defendant pointed to a cinder block. Ms. Dalton picked up the cinder block, and inside there was a ten-dollar bill and two "rocks" of crack cocaine. Ms. Dalton placed her money in the block.

During the transaction, one of the rocks fell on the ground, but Ms. Dalton retrieved it. Ms. Dalton was surprised that there were only two rocks of crack cocaine and asked, "Is this it, just two rocks?" Steve, one of the other men, then said, "I'll buy it back from you."

Agent Woodward, sitting in the passenger's seat of Ms. Dalton's vehicle, was able to observe the transaction between Ms. Dalton and the Defendant "from the chest up." Agent Woodward opined that she was approximately five feet away from Ms. Dalton and the Defendant, who were on the opposite side of the other truck. Agent Woodward was not able to hear the conversation, but she saw the two make an exchange. She also witnessed Ms. Dalton bend down to the ground "as if she had dropped something." Agent Woodward estimated that the entire episode lasted between three and five minutes.

According to Agent Woodward, as soon as Ms. Dalton returned to the vehicle, she turned over "two rocks that appeared to be crack cocaine." Later testing by the TBI revealed that the rocks were 1.3 grams of crack cocaine.

When Ms. Dalton returned to debriefing with Agent Williams she was searched again. She had a ten-dollar bill in her possession, which she said was change for her cocaine purchase. Agent Williams also observed that "[o]ne of the rocks appeared to have dirt on it." Although not able to visually observe the exchange, Agent Williams recognized the voices of Agent Woodward, Ms. Dalton, and the Defendant over the transmitting device, but there was an additional voice he was unable to identify. Agent Williams heard the unidentified individual ask after the sale was completed, "Let me buy that back off you."

Ms. Dalton testified at trial that she was positive that she purchased drugs from the Defendant and not one of the other two men present. She stated that she did not observe which individual took the money out of the cinder block.

Ms. Dalton, a nursing student at the time of trial, was thoroughly questioned about her motivations for working as a criminal informant. When asked why she agreed to cooperate in this manner, she responded that she once had a drug problem herself, that her mother was "on the verge of getting over a drug problem[,]" and that she wanted to "make [the] town a better place to live." She was not facing criminal charges at the time she became an

informant; she merely "wanted to help get it off the streets." According to Ms. Dalton, she was first approached about helping the TBI by a customer eating at "Lois'" establishment.

On cross-examination, Ms. Dalton confirmed that she got compensated for her assistance if the buy was successful. She was also asked if she was "at risk of losing [her] children . . . to the Department of . . . Child and Family Services." Ms. Dalton replied that she was not at risk of such action because her son lived with his grandparents, who had custody of him, and that she was not currently trying to regain custody of him. She testified that she had been drug-free for approximately two years.

Upon further examination, Ms. Dalton revealed that she had previously been involved in a relationship with the Defendant. However, she claimed that she did not have any "hard feelings" towards the Defendant.

*State v. Doyle Everette Haney*, No. E2010-02151-CCA-R3-CD, 2012 WL 2343619, at *1-3 (Tenn. Crim. App. June 20, 2012), *perm. app. denied* (Tenn. Sept. 18, 2012). On September 12, 2013, the Petitioner filed a petition for post-conviction relief alleging multiple grounds of ineffective assistance of trial and appellate counsel.

Relative to case number 3457, the Petitioner appealed his conviction, and this court summarized the facts of the case as follows:

On August 4, 2006, Tennessee Bureau of Investigation (TBI) Drug Division Assistant Special Agent Jim Williams monitored a controlled purchase of crack cocaine from the defendant by an undercover TBI agent, Teresa Woodward, and a confidential informant, Jacquelyn Dalton. Assistant Special Agent Williams assisted in briefing and debriefing Special Agent Woodward and Ms. Dalton, and he also recorded and monitored the transaction via transmitters placed on both women.

Special Agent Teresa Woodward testified that Ms. Dalton contacted the defendant via telephone to arrange the purchase of "an eight-ball" of crack cocaine. The defendant directed Special Agent Woodward and Ms. Dalton to meet him at his Cocke County residence. Upon their arrival, Rita York walked to the passenger's side of the car and spoke briefly to Ms. Dalton before going into the home. The defendant and Steve Allen then walked outside to the car. When Ms. Dalton asked the defendant if he had the crack cocaine with him, he invited the women inside the home for the purchase.

Special Agent Woodward and Ms. Dalton followed the defendant and Mr. Allen through the home to an adjacent garage. The defendant produced a "baggie" of crack cocaine from a pocket of his cargo pants. Special Agent Woodward saw the defendant count out six "rocks" to give Ms. Dalton in exchange for $80. The defendant then gave Special Agent Woodward five "rocks" in exchange for $70.

TBI Special Agent Sharon Norman's analysis confirmed that the "rocks" were 1.5 grams of crack cocaine.

*State v. Doyle Everette Haney*, No. E2010-02149-CCA-R3-CD, 2012 WL 243747, at \*1 (Tenn. Crim. App. Jan. 25, 2012), *perm. app. denied* (Tenn. May 16, 2012). On June 22, 2012, the Petitioner filed a petition for post-conviction relief alleging multiple grounds of ineffective assistance of trial and appellate counsel.

The post-conviction court consolidated the petitions for post-conviction relief and held an evidentiary hearing. On appeal, the Petitioner's contention that he received the ineffective assistance of counsel is limited to trial counsel's failure to inform him of an alleged nineteen-year plea offer before the first trial in case number 4924. As a result, our recitation of the evidence from the post-conviction hearing is limited to this issue.

At the post-conviction hearing, appellate counsel testified relative to case number 3457 that she believed trial counsel mentioned the State extended a plea offer but that trial counsel did not tell her the details of the offer. Relative to case number 4924, appellate counsel did not know if the State extended a plea offer. Appellate counsel emphasized that the Petitioner had multiple previous attorneys and that several offers were extended by the State. Appellate counsel, though, was unsure "at what time that may have occurred with [trial counsel]."

Trial counsel testified that he had practiced law since 1985 and that he represented the Petitioner in both cases. Relative to case number 3457, counsel said the State extended a plea offer. He said the offer was for "a whole lot less [time] than" the Petitioner received. He denied the offer was made the morning of the trial and said that to his recollection, "I think there was some time that offer was extended. And, you know, because I remember trying to get . . . a better offer and I believe that was . . . up the road from when the trial was happening that we tried to negotiate." When asked if he remembered the details of the offer, counsel said, "Yeah. Was it – I can't – it was 19 at 30 percent? I'm not sure. I don't remember." Counsel agreed that at the time of the trial in case number 3457, the Petitioner had already been convicted in case number 4924 and had received a thirty-year sentence at sixty percent service.

Trial counsel testified that the plea offer was extended before the trial in case number 4924. Counsel stated that the Petitioner "would have gotten his best relief . . . by . . . taking the offer before he had gone to trial on either of them." When asked if the offer was still on the table when the second trial began in case number 3457, counsel said, "I don't know because he had already received . . . 30 years. I mean, that would have been the minimum I think because he was a career offender." Counsel then said he was unsure if the offer was extended before the trial in case number 4924. Counsel did not remember whether the offer on the first day of the second trial in case number 3457 was thirty years concurrent with his previously imposed thirty-year sentence.

Relative to case number 3457, trial counsel was questioned about his trial strategy and whether he intended to present evidence. He stated that he planned to defend the Petitioner to the best of his abilities but that the Petitioner "didn't make the right decision" and "should have taken the offer." Counsel said that no evidence existed to call into question the Petitioner's guilt and that counsel had no evidence to present to the jury.

Relative to case number 4924, trial counsel testified that he thought but was unsure if the plea offer before the trial was nineteen years. He said it was possible the offer included the State's agreeing to a Range III, persistent offender classification rather than a career offender classification, but he was unsure. Counsel knew, though, "it was a whole chunk of less time."

The Petitioner testified relative to both cases that trial counsel told him the plea offer was "30 at 60, and if [he] took it to trial, [it] would be two 30s at 60. They would stack them." The Petitioner clarified, though, that concurrent or consecutive sentences would have been determined by the trial court. He said that had counsel conveyed a nineteen-year offer, he would have accepted it. He said that before counsel became his attorney, "the least they [were] going to offer me was 30 years at 60 percent" as a career offender.

The Petitioner testified relative to case number 3457 that trial counsel did not convey any plea offer. He said that had counsel conveyed a nineteen-year offer in case number 3457, he would have accepted it.

On cross-examination, the Petitioner testified that the thirty-year-concurrent plea offer might have been the offer made by the State. He said he knew it was thirty years at sixty percent.

The post-conviction court found at the evidentiary hearing that trial counsel, appellate counsel, and the Petitioner "measured up quite well to being credible witnesses[.]" The court found that the Petitioner exhibited "sound, good credibility." It credited trial counsel's

testimony that "there wasn't much chance of . . . getting a not guilty verdict" in the Petitioner's cases. Relative to counsel's overall performance, the court found after looking at the totality of circumstances that "there were things [counsel] could have done that he didn't do" but that counsel did not provide ineffective assistance. The court made no additional findings of fact or conclusions of law at the evidentiary hearing relative to any of the Petitioner's allegations related to counsel's performance. The court's written order denying post-conviction relief only states the court found that counsel did not render the ineffective assistance of counsel in case number 3457.[1] This appeal followed.

The Petitioner contends that the trial court erred by denying post-conviction relief because trial counsel provided the ineffective assistance of counsel in both cases. The Petitioner argues counsel failed to convey an alleged nineteen-year plea offer that he would have accepted had it been conveyed to him. The State initially responds that whether counsel failed to convey a offer to the Petitioner was not raised in either the *pro se* or amended petitions for post-conviction relief and that the issue should be considered waived. Alternatively, the State argues that the Petitioner failed to establish his claim by clear and convincing evidence.

As a preliminary matter, we have reviewed the Petitioner's *pro se* and amended petitions for post-conviction relief in each case. Relative to case number 3457, neither the Petitioner's *pro se* petition nor the amended petition filed by post-conviction counsel state a claim that trial counsel provided ineffective assistance by failing to convey a plea offer to the Petitioner. Relative to case number 4924, the Petitioner did not file a *pro se* petition, but the petition filed by post-conviction counsel contends that counsel provided ineffective assistance by failing "to engage in meaningful plea bargaining with the State." As a result, the Petitioner did not raise the issue currently before this court in either of his petitions for relief.

Evidence at a post-conviction hearing is "limited to issues raised in the petition." Tenn. Sup. Ct. R. 28, § 8(D)(4) (stating that "[t]he hearing shall be limited to issues raised in the petition"); *see* T.C.A. § 40-30-110(c) (2012) (stating that "[p]roof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition"); *id.* § 40-30-104(d) (2012) (stating that "[t]he petitioner shall include [in his petition] all claims known to the petitioner for granting post-conviction relief"). In any event,

---

[1] We note that although the post-conviction court made limited findings of fact and conclusions of law on the record at the evidentiary hearing and filed a written order generally denying relief relative to trial counsel's performance, the court failed to comply with Tennessee Code Annotated section 40-30-111(b) (2012), which required the court to enter a final order stating "all grounds presented[] and . . . the findings of fact and conclusions of law with regard to each ground."

the State did not object to the Petitioner's presenting evidence about an alleged plea offer that was never conveyed to him, and testimony was presented at the post-conviction hearing in this regard. We will consider the issue on its merits because the evidence was heard by the post-conviction court. *See Walsh v. State*, 166 S.W.3d 641, 645 (Tenn. 2005) (concluding that the State's failure to assert the defense of waiver at the post-conviction hearing precluded it from asserting the same on appeal); *see also* T.C.A. § 40-30-110(f) (2012) ("There is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived.").

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant*

*v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The record reflects that the post-conviction court credited the testimony of trial counsel and the Petitioner at the evidentiary hearing. Counsel's accredited testimony shows that he could only recall that the State extended a plea offer before the trial in case number 4924 and that the offer was for significantly less time than the Petitioner's effective thirty-year sentence imposed after the two trials. No evidence shows that any pretrial offer in case number 4924 also included an offer in case number 3457. Counsel was unsure if the offer remained effective after the trial in case number 4924 but before the trial in case number 3457. Post-conviction counsel did not ask counsel if he conveyed this offer to the Petitioner, and counsel testified that he thought the Petitioner should have accepted the offer before either trial and that the Petitioner made a poor decision by not accepting this offer. Counsel's testimony implies the Petitioner's testimony that counsel never conveyed an offer of less than thirty years was inaccurate.

Whether the offer was conveyed to the Petitioner is a question of fact, and the Petitioner had the burden of proving his factual allegation that the offer was not conveyed to him by clear and convincing evidence. *See* T.C.A. § 40-30-110(f). The Petitioner's assertion during oral argument that the State's failure to present evidence that trial counsel conveyed the offer shows the offer was not conveyed will not suffice in satisfying the Petitioner's burden. Because the post-conviction court credited the testimony of counsel and the Petitioner and did not make specific findings of fact relative to the plea offer, we are unable to conclude that counsel failed to convey the offer to the Petitioner. However, the court's conclusion that counsel did not provide the ineffective assistance of counsel implies the court found that the Petitioner failed to establish either that counsel failed to covey the offer or that the Petitioner would have accepted it if conveyed, or that the Petitioner failed to establish both. Therefore, based on the record currently before this court, we conclude that counsel was not deficient and that the Petitioner is not entitled to relief.

The judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE